THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
CHERYL O'CONNOR MURPHY (CA Bar No. 173897)
SARAH J. HEIDEL (CA Bar No. 209886)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0759
    Facsimile: (213) 894-6436
    e-mail: cheryl.murphy@usdoj.gov
        sarah.heidel@usdoj.gov

ANDREW J. KLINE (DC Bar No. 441-845)
Special Litigation Counsel
Civil Rights Division
United States Department of Justice
Washington, DC 20004
Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) CR No. <u>07-11(B)-MMM</u> |
|---|---|
| Plaintiff, | ) <u>PLEA AGREEMENT FOR DEFENDANT</u> |
| v. | ) <u>PABLO BONIFACIO</u> |
| PABLO BONFACIO, | ) |
| Defendant. | ) |

    1. This constitutes the plea agreement between PABLO BONIFACIO ("defendant"), the United States Attorney's Office for the Central District of California ("the USAO"), and the United States Department of Justice, Civil Rights Division ("DOJ-CRD") in the above-captioned case. This agreement is limited to the USAO and DOJ-CRD and cannot bind any other federal, state or

1 | local prosecuting, administrative or regulatory authorities.

## PLEA

2.  Defendant agrees to plead guilty to counts one and fifty of the second superseding indictment in <u>United States v. Vasquez-Valenzuela, et al.</u>, CR 07-11(B)-MMM.

## NATURE OF THE OFFENSE

3.  In order for defendant to be guilty of count one, which charges a violation of Title 18, United States Code, Section 371 (Conspiracy), the following must be true:  (a) there was an agreement between two or more persons to commit at least one crime as charged in the second superseding indictment (namely, (i) to violate Title 8, United States Code, Section 1328 (Importation of Aliens for Immoral Purpose), or (ii) to violate Title 18, United States Code, Section 1591(a)(1) (Sex Trafficking of Children or by Force, Fraud, and Coercion)); (b) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (c) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

In order for defendant to be guilty of count fifty, which charges a violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), (a)(1)(B)(i) the following must be true: (a) there was an alien; (b) the alien was not lawfully in the United States; (c) the defendant knew that the alien was not lawfully in the United States; and (d) the defendant knowingly transported or moved, or attempted to move the alien in order to help the alien remain in the United States illegally.  Defendant further admits that defendant is, in fact, guilty of these

1  offenses as described in counts one, and fifty of the second
2  superseding indictment.
3      Moreover, in order for defendant to be subject to the
4  statutory maximum sentence set forth below, the government must
5  prove beyond a reasonable doubt that defendant acted for the
6  purpose of commercial advantage or private financial gain.
7  Defendant admits that defendant, in fact, acted for the purpose
8  of commercial advantage or private financial gain as described in
9  count fifty of the second superseding indictment.

## PENALTIES AND RESTITUTION

11      4.   The statutory maximum sentence that the Court can impose
12  for a violation of Title 18, United States Code, Section 371 is:
13  five years imprisonment; a three-year period of supervised
14  release; a fine of $250,000 or twice the gross gain or gross loss
15  resulting from the offense, whichever is greatest; and a
16  mandatory special assessment of $100.
17      The statutory maximum sentence that the Court can impose for
18  a violation of Title 8, United States Code, Section
19  1324(a)(1)(A)(ii), (a)(1)(B)(i) is:  ten years imprisonment; a
20  three-year period of supervised release; a fine of $250,000 or
21  twice the gross gain or gross loss resulting from the offense,
22  whichever is greatest; and a mandatory special assessment of
23  $100.
24      Therefore, the total maximum sentence for all offenses to
25  which defendant is pleading guilty is:  15 years imprisonment; a
26  three-year period of supervised release; a fine of $500,000 or
27  twice the gross gain or gross loss resulting from the offenses,
28  whichever is greatest; and a mandatory special assessment of

1 $200.

2    5.   Defendant understands that defendant will be required to
3 pay full restitution to the victims of the offenses.  Defendant
4 agrees that, in return for the USAO's compliance with its
5 obligations under this agreement, the amount of restitution is
6 not restricted to the amounts alleged in the counts to which
7 defendant is pleading guilty and may include losses arising from
8 counts dismissed pursuant to this agreement as well as all
9 relevant conduct in connection with those counts.  Defendant
10 further agrees that defendant will not seek the discharge of any
11 restitution obligation, in whole or in part, in any present or
12 future bankruptcy proceeding.

13    6.   Supervised release is a period of time following
14 imprisonment during which defendant will be subject to various
15 restrictions and requirements.  Defendant understands that if
16 defendant violates one or more of the conditions of any
17 supervised release imposed, defendant may be returned to prison
18 for all or part of the term of supervised release, which could
19 result in defendant serving a total term of imprisonment greater
20 than the statutory maximum stated above.

21    7.   Defendant also understands that, by pleading guilty,
22 defendant may be giving up valuable government benefits and
23 valuable civic rights, such as the right to vote, the right to
24 possess a firearm, the right to hold office, and the right to
25 serve on a jury.

26    8.   Defendant further understands that the conviction in
27 this case may subject defendant to various collateral
28 consequences, including but not limited to, deportation,

revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

9.  Defendant and the USAO agree and stipulate to the statement of facts provided below. This statement of facts includes facts sufficient to support a plea (or pleas) of guilty to the charges described in this agreement and to establish the sentencing guideline factors set forth in paragraph 11 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

**SEE ATTACHMENT A**

## WAIVER OF CONSTITUTIONAL RIGHTS

10.  By pleading guilty, defendant gives up the following rights:

   a) The right to persist in a plea of not guilty.

   b) The right to a speedy and public trial by jury.

   c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his or her plea of guilty, he or she retains the right to be represented by counsel - and, if necessary, to have the court appoint counsel if defendant cannot afford counsel - at every other stage of the proceedings.)

   d)  The right to be presumed innocent and to have the

burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

  e) The right to confront and cross-examine witnesses against defendant.

  f) The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

  g) The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

 By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>SENTENCING FACTORS</u>

 11. Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence.  Defendant understands that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

 12. Defendant and the USAO agree and stipulate to the following applicable sentencing guideline factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 24 | U.S.S.G. § 2G1.3(a) |
| Commercial Sex Act | : | +2 | U.S.S.G. § 2G1.3(b)(4)(B) |

1       Minimal Role        :    -4      U.S.S.G. § 3B1.2(a)
2  Defendant and the USAO reserve the right to argue that additional
3  specific offense characteristics, adjustments and departures are
4  appropriate.  Defendant also understands that defendant's base
5  offense level could be increased if defendant is a career
6  offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  In the event that
7  defendant's offense level is so altered, the parties are not
8  bound by the base offense level stipulated to above.
9       13.  There is no agreement as to defendant's criminal
10 history or criminal history category.
11      14.  Defendant and the USAO, pursuant to the factors set
12 forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and
13 (a)(7), further reserve the right to argue for a sentence outside
14 the sentencing range established by the Sentencing Guidelines.
15      15.  The stipulations in this agreement do not bind either
16 the United States Probation Office or the Court.  Both defendant
17 and the USAO are free to:  (a) supplement the facts by supplying
18 relevant information to the United States Probation Office and
19 the Court, (b) correct any and all factual misstatements relating
20 to the calculation of the sentence, and (c) argue on appeal and
21 collateral review that the Court's sentencing guidelines
22 calculations are not error, although each party agrees to
23 maintain its view that the calculations in paragraph 12 are
24 consistent with the facts of this case.
25                    <u>DEFENDANT'S OBLIGATIONS</u>
26     16.  Defendant agrees that he or she will:
27         a) Plead guilty as set forth in this agreement.
28         b) Not knowingly and willfully fail to abide by all

sentencing stipulations contained in this agreement.

  c) Not knowingly and willfully fail to: (i) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

  d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

  e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

  f) Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement (form OBD-500) to the USAO prior to sentencing.

## THE USAO'S OBLIGATIONS

17. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

  a) To abide by all sentencing stipulations contained in this agreement.

  b) At the time of sentencing to move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all

other relevant factors.

      c) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

      d)  To recommend that defendant be sentenced at the low end of the applicable Sentencing Guidelines range provided that the total offense level as calculated by the Court is 19 or higher, and provided that the Court does not depart downward in offense level or criminal history category.

## BREACH OF AGREEMENT

18. If defendant, at any time after the execution of this agreement, knowingly violates or fails to perform any of defendant's agreements or obligations under this agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this agreement breached at any time following its execution, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty plea, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all of its obligations under this agreement.

19. Following the Court's finding of a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b) Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the stipulated factual basis statement in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any such prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

<u>LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

20.  Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution, and the manner in which the sentence is determined, provided that the Court imposes a sentence within or below the range corresponding to a total offense level of 26 and the applicable criminal history category, as determined by the Court.  Defendant also gives up any right to bring a post-conviction collateral attack

on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or a explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

21. The USAO gives up its right to appeal the Court's sentence, provided that the Court imposes a sentence within or above the range corresponding to the determined total offense level 19 and the applicable criminal history category, as determined by the Court.

## COURT NOT A PARTY

22. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one – not the prosecutor, defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

23. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement,

11

1  understanding or condition be entered into unless in a writing
2  signed by all parties or on the record in court.
3  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>
4     24.  The parties agree and stipulate that this Agreement
5  will be considered part of the record of defendant's guilty plea
6  hearing as if the entire Agreement had been read into the record
7  of the proceeding.
8     This agreement is effective upon signature by defendant and
9  an Assistant United States Attorney.
10 AGREED AND ACCEPTED
11 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
   THOMAS P. O'BRIEN
13 United States Attorney
14 
15 _____     _____4/23/08_____
   SARAH J. HEIDEL                     Date
16 Assistant United States Attorney

17    This agreement has been read to me in Spanish, the language
18 I understand best, and I have carefully discussed every part of
19 it with my attorney.  I understand the terms of this agreement,
20 and I voluntarily agree to those terms.  My attorney has advised
21 me of my rights, of possible defenses, of the Sentencing
22 Guideline provisions, and of the consequences of entering into
23 this agreement.  No promises or inducements have been made to me
24 other than those contained in this agreement.  No one has
25 threatened or forced me in any way to enter into this agreement.
26 //
27 //
28 //

Finally, I am satisfied with the representation of my attorney in this matter.

_____     4/16/08
PABLO BONIFACIO              Date
Defendant

I, Teri Szucs, am fluent in written and spoken English and Spanish languages. I accurately translated this entire agreement from English into Spanish to defendant PABLO BONIFACIO on this date.

_____     4-16-08
Interpreter                   Date

I am PABLO BONIFACIO's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____     4/16/08
BRIAN A. NEWMAN              Date
Counsel for Defendant
Pablo Bonifacio

13

**ATTACHMENT A**

Beginning on an unknown date and continuing until December 20, 2006, defendant, who was a pirate taxi cab driver, and co-defendants Gladys Vasquez Valenzuela ("Gladys"), Mirna Jeanneth Vasquez Valenzuela, also known as ("aka") Miriam ("Miriam"), Albertina Vasquez Valenzuela, aka Cristina ("Cristina"), Maria De Los Angeles Vicente, aka Angela ("Angela"), Flor Morales Sanchez ("Sanchez"), Luis Vicente Vasquez, aka Armando ("Armando"), Maribel Rodriguez Vasquez ("Maribel"), and Gabriel Mendez ("Mendez"), agreed with each other and others to bring young female aliens from Guatemala into the United States illegally to work as prostitutes in the Los Angeles area and to keep, maintain, control, support, employ, and harbor such female aliens in Los Angeles for the purpose of prostitution. Defendant's role was to transport young female aliens, specifically those referred to in the second superseding indictment as Minor Female #4, Jane Doe #2, Jane Doe #7, to different locations within Los Angeles so that the young female aliens could find customers and engage in prostitution. Defendant was paid for his transportation services.

Defendant stipulates and agrees that the government would prove the following at trial: Angela, Gladys, Miriam and Maribel arranged for their relatives in Guatemala to recruit young females to be smuggled into the United States illegally from Guatemala, with the intention that the smuggled females would work for them as prostitutes in Los Angeles. Most of the young female aliens were promised legitimate jobs and did not learn that they would have to work as prostitutes until they arrived in

14

Los Angeles.  Defendant did not have knowledge with respect to the manner in which  Angela, Gladys, Miriam and Maribel recruited the young females.

Once the young female aliens arrived in Los Angeles, either defendant, Sanchez, Angela, Gladys, Armando, Miriam, Mendez or Maribel, or some combination thereof, picked up the young female aliens from the smugglers and paid the smuggling fees.  The government would prove at trial that Angela, Gladys, Miriam, Mendez and Maribel forced the young female aliens to work for them as prostitutes to repay their smuggling fees plus any accrued interest.

During the time that defendant lived with Angela, Angela had three young females, Minor Female #4, Jane Doe #2, and Jane Doe #7 work for her as prostitutes.  The young females lived with Angela.  At different times, defendant, Armando, Angela and Sanchez, or some combination thereof, each transported the three young females to the area of 8th and Alvarado in Los Angeles to find prostitution customers and then drove them to apartments rented by Angela where the young females would engage in prostitution.  Defendant maintains that he has no knowledge of what happened to the prostitution proceeds received by the young females, but acknowledges that at trial the government would prove that Angela collected and maintained control over the prostitution proceeds.

From the time Jane Doe #2 arrived in Los Angeles in January 2006 until on or about December 20, 2006, defendant and Armando at different times each drove Jane Doe #2 around the area of 8th and Alvarado Streets in Los Angeles to look for prostitution

15

customers and then drove her and her customers to apartments rented by Angela for the purpose of engaging in commercial sex acts inside the apartments.

From the time that Minor Female #4 arrived in Los Angeles in or about February 2006 until on or about December 20, 2006, Armando, Angela, Sanchez, and later defendant, knew that Minor Female #4 was under the age of 18. Angela had originally told defendant that Minor Female #4 was 19 years old. At different times, defendant and Armando each drove Minor Female #4 around the area of 8th and Alvarado Streets in Los Angeles to find prostitution customers. Defendant and Armando would each transport Minor Female #4 and her prostitution customers to apartments rented by Angela, knowing that Minor Female #4 was engaging in acts of prostitution inside the apartments.

From the time that Jane Doe #7 arrived in Los Angeles until on or about December 20, 2006, defendant and Armando, at different times, each drove Jane Doe #7 around the area of 8th and Alvarado Streets in Los Angeles to solicit prostitution customers and then transported her and her customers to apartments rented by Angela. Defendant and Armando would return to the apartment to pick up Jane Doe #7, knowing that Jane Doe #7 was engaging in acts of prostitution inside the apartments with the customers.

At all relevant times, defendant was paid for his services transporting the Minor Female #4, Jane Doe #2 and Jane Doe #7, and knew that Minor Female #4, Jane Doe #2 and Jane Doe #7 were in the United States illegally and were working as prostitutes.