THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
CHERYL O'CONNOR MURPHY (CA Bar No. 173897)
SARAH J. HEIDEL (CA Bar No. 209886)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-0759/2451
     Facsimile:  (213) 894-6269
     E-mail: cheryl.murphy@usodj.gov
             sarah.heidel@usdoj.gov

ANDREW J. KLINE (DC Bar No. 441-845)
Special Litigation Counsel
Civil Rights Division
United States Department of Justice
Washington, DC 20004

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. CR 07-11(B)-MMM |
| Plaintiff, | ) GOVERNMENT'S RESPONSE TO DEFENDANT BONIFACIO'S OBJECTIONS TO THE GOVERNMENT'S SUBMISSION OF RESTITUTION ANALYSIS |
| v. | |
| PABLO BONIFACIO, | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, respectfully files its response to defendant Bonifacio's Objection to the Government's Submission of Restitution Analysis.

DATED: August 18, 2008         Respectfully Submitted,

                                       THOMAS P. O'BRIEN
                                       United States Attorney

                                       CHRISTINE C. EWELL
                                       Assistant United States Attorney
                                       Chief, Criminal Division

                                       SARAH J. HEIDEL
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

Defendant appears to object to the government's request for restitution in this case on three general grounds; (1) the total amount of restitution that the government is seeking, (2) defendant's lack of financial resources, and (3) the victims' eligibility for restitution under 18 U.S.C. § 3663.

**A. Defendant's Challenges To The Amount And Manner In Which The Government Calculated Restitution In This Case Are Without Merit**

Defendant objects to the government's position regarding restitution on the ground that the government is seeking $345,657.38 in restitution from defendant. Defendant is mistaken. As the government explained in its papers, with respect to defendant (Bonifacio), the government is only seeking restitution owed to victims with whom defendant directly interacted, namely Jane Doe #2, Jane Doe #7, and Minor Female #4, for a total of $77,654. (See Government's Position Regarding Restitution Owed By Defendant Pablo Bonifacio at 3).

Defendant also purports to challenge the manner in which the government calculates the back wages owed to the victims, and the government's reliance on victim interviews to establish the hours per week and total duration that each victim worked. (Defendant's Objections at 3). Notably, defense counsel does not point to any error in the government's calculation, but merely states that he "is not proficient in labor law and therefore is unsure of the appropriateness of" the government's methodology.

(Defendant's Objections at 3). Defense counsel's self-professed lack of proficiency is not a proper objection to the government's analysis.

The schedules reported by the victims at issue here are as follows:

| Name | Time Period Worked | Number of Hours Worked Per Day | Number of Days Worked Per Week | Bates Range Relating to Victims's Schedules (attached hereto as Ex. 1) |
|---|---|---|---|---|
| Minor Female #4 | 2/06-12/20/06 | 11 a.m. to 10 p.m. | 7 days per week | 2558, 4412 |
| Jane Doe #2 | 1/06-12/20/06 | 9 a.m. to 12 a.m. | 6 days per week | 2468, 2429 |
| Jane Doe #7 | 10/5/06-12/20/06 | 9 a.m. to 12 a.m. | 6 days per week | 2426, 2427, 2429 |

Using these schedules, the Department of Labor calculated the back wages owed to the victims using the California minimum wage ($6.75 per hour) and overtime.[1] The government relied on the California minimum wage because under the Federal Labor Standards Act ("FLSA") back wage computations based on minimum wage rely on

---

[1] The chart previously submitted by the government used the following formula: (amount due under the federal minimum wage (the Federal MW Due column)) + (the difference due under California minimum wage because California minimum wage is higher (the RR Due column)) + (overtime owed under the federal minimum wage (½ Time Due column)) + (the difference in overtime owed under California and Federal minimum wage because California minimum wage is higher (OT Due))= Total Due Per Week.

1 state or federal minimum wage depending on which is higher.

3 Moreover, the government's approach for calculating
4 restitution is consistent with the analysis used in similar
5 cases. For example, in United States v. Chang Da Liu, two sex
6 trafficking victims testified at trial that they had signed
7 contracts with the defendants to work in Saipan for $7.00 per
8 hour. 2008 WL 3388938 *9 (Ninth Cir. Aug. 13, 2008). The
9 victims, further testified that "they worked ten months with no
10 time off for evenings or weekends." Id. The probation officer
11 who prepared the PSR used the wage and hour figures provided by
12 the victims to determine that they "would have earned about
13 $23,220 had they been paid regularly and earned overtime." Id.
14 In affirming the district court's order of restitution, the Ninth
15 Circuit upheld the methodology relied on by the district court.
16 Id.

17 This case is nearly identical. Here the government used the
18 minimum legal wage in California to calculate what the victims
19 would have earned given their stated work schedules. Under Chang
20 Da Liu, the government's methodology is reasonable.

21 **B.  Defendant's Current Lack Of Resources Does Not Preclude**
22 **An Order Of Restitution**

23 In determining whether to order restitution, the court must
24 consider defendant's resources, including his financial needs and
25 earning potential. 18 U.S.C. § 3663(a)(1)(B)(II).

26 The government acknowledges that at this time defendant has
27 little or no apparent ability to make payments toward an order of
28 restitution. Nevertheless, the government believes that

1  restitution is appropriate given defendant's circumstances.
2  Defendant is 31 years old, and is in good health.  (PSR ¶¶ 92,
3  93).  Although is skills are modest, he is capable of working.
4  (PSR ¶¶ 97-99).  He has only one dependent.  (PSR ¶ 90).
5  Additionally, defendant is facing a relatively short sentence.
6  Upon his release, defendant will have decades in which to earn a
7  living.  It is fitting that the court order restitution which
8  would require some portion of defendant's future income to be
9  allocated to compensating the victims for their losses.

**C.   The Victims In This Case Constitute "Victims" For Purposes Of 18 U.S.C. § 3663**

Defendant maintains that the victims in this case, are not "victims" under 18 U.S.C. § 3663 because "any wages they may have 'earned' would have been due to their own criminal actions [prostitution]."  (See generally Defendant's Objections at 2, 8). Defendant's argument misses the point.  The evidence shows that victims in this case were forced into prostitution (from which they received little or no proceeds), and deprived of their right to earn wages through legitimate work.

The Victim Witness Protection Act ("VWPA") provides that for the purposes of restitution, a victim of "an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity" means "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern."  18 U.S.C. § 3663; United States v. Sanga, 967 F.2d 1332, 1334 (9th Cir. 1992).  The Ninth Circuit has held that where the underlying conviction is for conspiracy, "the restitution must be limited to the loss flowing from the

1 conspiracy itself." Sanga, 967 F.2d at 1334.  In other words,
2 the "loss must result from the act or acts done in furtherance of
3 the conspiracy."  Id.
4    Here, defendant pleaded guilty to two counts (Counts 1 and
5 50 of the Second Superseding Indictment) for Conspiracy (to
6 violate 8 U.S.C. § 1328 (Importation of An Alien For Immoral
7 Purposes) and 18 U.S.C. § 1591 (Sex Trafficking)), in violation
8 of 18 U.S.C. § 371, and to Transporting An Illegal Alien, in
9 violation of 8 U.S.C. § 1324.  The objects of the conspiracy
10 charged in Count 1 were (1) to "import female aliens into the
11 United States from Guatemala for the purpose of prostitution and
12 other immoral purposes, an keep, maintain, control, support,
13 employ, and harbor such female aliens in various places for the
14 purpose of prostitution and other immoral purposes," and (2) to
15 "recruit, entice, harbor, transport, provide, and obtain by any
16 means young females, knowing that force, fraud and coercion would
17 be used to cause the young females to engage in commercial sex
18 acts, and knowing that some of the females had not attained the
19 age of 18 years and would be caused to engage in commercial sex
20 acts."
21    Defendant is charged in the conspiracy with committing
22 numerous overt acts including, among others, transporting a minor
23 and other young females, knowing that the minor and other young
24 females were engaging in acts of prostitution (see Second
25 Superseding Indictment (overt acts 31, 54, 83), and guarding and
26 monitoring a minor and other young females to prevent them from
27 escaping (see Second Superseding Indictment (overt acts 32, 55,
28 84).  This conduct directly contributed to the victims losses,

5

which were suffered as a result of being forced into prostitution.  Accordingly, it is clear that the victims' losses flow from the conspiracy.

The Ninth Circuit reached a similar conclusion in <u>United States v. Sanga</u>, 967 F.2d 1332, 1334 (9th Cir. 1992).  <u>Sanga</u> involved a defendant who conspired to smuggle a woman into Guam, and to employ the woman as a live-in maid.  <u>Id.</u>  When the woman arrived in Guam, the defendant informed her that she would be working for him as a maid.  <u>Id.</u>  When the woman objected, defendant threatened her and hid her passport and return airline ticket.  <u>Id.</u>  Defendant forced the woman to work for him approximately 14 hours a day, seven days a week for only $150 per month.  <u>Id.</u>  Defendant also forced the woman to have sex with him in exchange for providing her with false identification papers that would enable her to work outside his home.  <u>Id.</u>  Following defendant's guilty plea, the court ordered restitution for back wages due.  <u>Id.</u> at 1335-36.

On appeal, defendant argued that a victim who was a willing participant in a scheme to smuggle herself into the country could not also be a victim of the conspiracy.  The Ninth Circuit rejected that argument.  <u>Id.</u> at 1334.  The court held that restitution was appropriate because the victim's "lost wages were the direct consequence of [defendant's] conspiracy to smuggle her into Guam from the Philippines for purposes of that illegal employment, and as such 'flow from the conspiracy itself."  <u>Id.</u> at 1335.

As in <u>Sanga</u>, the victims' lost wages were a direct consequence of defendant's participation conspiracy to smuggle

the victims into the United States for purposes of prostitution, and his role in transporting the victims and preventing them from escaping.

## III

## CONCLUSION

For all the foregoing reasons, the government requests that the Court order defendant to pay restitution in the amount of $77,654.00.